Slip Op. 12–42

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ACME FURNITURE INDUSTRY, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> - and - <br><br> AMERICAN FURNITURE MANUFACTURERS COMMITTEE FOR LEGAL TRADE and VAUGHAN-BASSETT FURNITURE COMPANY, INC., <br><br> Defendant-Intervenors. | Before: Gregory W. Carman, Judge <br><br> Court No. 11-00137 |

## OPINION

[Sustaining the Department of Commerce's scope determination]

Dated: March 23, 2012

*Robert T. Hume*, and *Stephen M. De Luca*, Hume & De Luca, PC, of Washington, DC for Plaintiff.

*Douglas G. Edelschick*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for Defendant. With him on the briefs were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Claudia Burke*, Assistant Director, and *Scott McBride*, Senior Attorney, United States Department of Commerce, of Counsel.

*Joseph W. Dorn*, *Stephen A. Jones*, *J. Michael Taylor* and *Daniel L. Schneiderman*, King

& Spalding LLP, of Washington, DC for Defendant-Intervenors.

CARMAN, JUDGE: Plaintiff Acme Furniture Industry, Inc. ("Acme" or "Plaintiff") challenges a scope determination issued by the U.S. Department of Commerce ("Commerce") deciding that Acme's imported product falls within the scope of the antidumping duty order on wooden bedroom furniture ("WBF") from the People's Republic of China. (Compl. ¶ 1.) For the reasons set forth below, Commerce's determination is sustained.

## BACKGROUND

In 2005, Commerce issued an antidumping duty order on WBF from the People's Republic of China ("the Order"). <u>Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Wooden Bedroom Furniture From the People's Republic of China</u>, 70 Fed. Reg. 329 (Jan. 4, 2005). The scope of the Order states, in relevant part, that

> [t]he product covered by the order is **wooden bedroom furniture**. Wooden bedroom furniture is generally, but not exclusively, designed, manufactured, and offered for sale in coordinated groups, or bedrooms, in which all of the individual pieces are of approximately the same style and approximately the same material and/or finish. The subject merchandise is made **substantially of wood products**, including both solid wood and also engineered wood products made from wood particles, fibers, or other wooden materials such as plywood, oriented strand board, particle board, and fiberboard, with or without wood veneers, wood overlays, or laminates, with or without non-wood components or trim such as metal, marble, leather, glass, plastic, or other resins, and whether or not assembled, completed, or finished.

Court No. 11-00137 Page 3

Id. at 332 (emphasis added).  The scope explicitly encompasses "[w]ooden beds such as loft beds, bunk beds, and other beds[,]" and explicitly excludes "sofa beds," and "upholstered beds."  Id.; Wooden Bedroom Furniture from the People's Republic of China: Final Results of Changed Circumstances Review and Determination to Revoke Order in Part, 72 Fed. Reg. 7,013, 7,014 (Feb. 14, 2007) (adding the exclusion for "upholstered beds" to the language of the original scope).

Acme requested a scope determination that its upholstered daybed with trundle fell outside the scope of the WBF Order.[1]  Wooden Bedroom Furniture from the People's Republic of China: Scope Ruling on Acme Furniture Industry, Inc.'s Upholstered Daybeds ("Final Determination") 1, (App'x. 2 to Pl.'s Mem. In Supp. of its R. 56.2 Mot. for J. Upon the Agency R. ("Pl.'s Mot.") (Apr. 15, 2011)).  Acme argued for this outcome, variously contending that the daybed with trundle (1) is not "substantially made of wood," (2) is not bedroom furniture because it is not sold as a bedroom set, (3) is an excluded upholstered bed, or (4) is an excluded sofa bed.  Id. at 6.

Commerce did not agree.  In its Final Determination, Commerce concluded that Acme's daybed with trundle falls within the scope of the WBF Order as an "other bed." Id. at 12–13.  Commerce determined that "the extensive use of wood products in all of

---

[1] Acme also sought a determination that a different product—its daybed without trundle—was outside the scope of the order.  Commerce agreed with Acme's request with respect to this product, and Acme therefore does not challenge that aspect of Commerce's determination.

**Court No. 11-00137**                                                                                                      Page 4

the essential structural components of the bed; namely, the headboard, the footboard, the side rails; and the trundle unit; demonstrates that this bed is extensively made of wood products." Id. at 11.  Because Commerce found the product's wood to be "integral to its composition," Commerce concluded that the daybed with trundle is "substantially made of wood," as that phrase is used in the scope language. Id. Commerce considered Acme's argument that the product is not bedroom furniture because it is not sold as part of a bedroom set, but noted that the language of the scope does not require all covered products to be sold in bedroom sets. Id. at 11–12. Additionally, Commerce did not accept Acme's arguments that the daybed with trundle was either an excluded upholstered bed or an excluded sofa bed.  Commerce noted that to qualify as an upholstered bed, the daybed with trundle would have to be "completely upholstered . . . except for bed feet," which Acme conceded it was not. Id. at 11.  And, consistent with a previous scope determination involving daybeds, Commerce found that the daybed with trundle was not essentially an excluded sofa bed, but rather was an "other bed," subject to the Order. Id. 12–13.  Commerce therefore concluded that the daybed with trundle was a bed covered by the scope of the WBF Order. Id. at 13.  Acme then filed this lawsuit to challenge Commerce's determination.  (Compl. ¶ 1).

### STANDARD OF REVIEW

In an action such as this, brought to contest a determination by Commerce "as to whether a particular type of merchandise is within the class or kind of merchandise described in an . . . antidumping or countervailing duty order," the Court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. §§ 1516a(a)(2)(B)(vi), (b)(1). The courts grant "significant deference to Commerce's own interpretation" of the scope of its antidumping and countervailing duty orders, <u>Duferco Steel, Inc. v. United States</u>, 296 F.3d 1087, 1094–95 (Fed. Cir. 2002) (citing <u>Ericsson GE Mobile Commc'ns, Inc. v. United States</u>, 60 F.3d 778, 782 (Fed. Cir. 1995)), but Commerce cannot change the scope of such orders through interpretation, nor interpret them in a manner contrary to their terms, <u>Eckstrom Indus., Inc. v. United States</u>, 254 F.3d 1068, 1072 (Fed. Cir. 2001).

### ANALYSIS

Commerce's decision that the scope of the WBF Order encompasses Acme's daybed with trundle is supported by substantial evidence on the record and otherwise in accordance with law. While the phrase "made substantially of wood products" in the scope of the antidumping duty order is susceptible of multiple interpretations, 70 Fed. Reg. at 332, Commerce's interpretation of the phrase in this instance was

reasonable.  Commerce found an "extensive use" of wood products in all of the "essential structural components" of Plaintiff's bed, that wood is "integral" to the bed's composition, and that "[i]f the wood were removed, there would be no bed."  Final Determination 11.  Under such circumstances, Acme's daybed with trundle can fairly be regarded as "made substantially of wood products."  Additionally, under the plain language of the scope, Commerce was justified in concluding that Acme's daybed with trundle was covered by the WBF Order as a bed, and "not covered by the scope exclusions for sofa beds and completely upholstered beds."  Id. at 13.  Commerce is correct that the scope does not solely pertain to items sold in sets; the WBF Order specifies that "[w]ooden bedroom furniture is **generally, but not exclusively**, designed, manufactured, and offered for sale in coordinated groups, or bedrooms . . . ."  70 Fed. Reg. at 332 (emphasis added).  Consequently, because the daybed with trundle is a bed made substantially from wood products, Commerce was justified in determining that it is included within the scope of the WBF Order.

   Commerce's decision that no exclusion removes Acme's daybed with trundle from the scope of the WBF Order is also supported by substantial evidence on the record and otherwise in accordance with law.  First, Commerce's determination that Acme's daybed with trundle does not qualify as an upholstered bed is supported by the plain language of the WBF Order, which specifies that "[t]o be excluded, the entire bed

(headboards, footboards, and side rails) must be upholstered except for bed feet." 72 Fed. Reg. at 7,014 n.14. By Acme's acknowledgment, the daybed with trundle is not thus upholstered. Final Determination 11. The Court does not accept Acme's argument that, because the daybed with trundle is "87 percent" upholstered, Commerce was obliged to treat it as completely upholstered. (Pl.'s Mot. 16–17.) The scope defines the parameters of complete upholstering with specificity, 72 Fed. Reg. at 7,014 n.14, and Acme's daybed with trundle simply does not fit the bill. See Eckstrom Indus., 254 F.3d at 1072 (stating that the language of a scope may not be interpreted contrary to its terms).

Second, Commerce was justified in concluding that Plaintiff's product is not an excluded sofa bed. Contrary to Acme's argument (Pl.'s Mot. 16), the scope language does not compel Commerce to conclude that Acme's product is an excluded sofa bed. Commerce's conclusion that Acme's daybed with trundle has more in common with a twin size bed than with a sofa bed (Final Determination 13) is reasonable, consistent with a prior agency determination, and will not be set aside.

## Conclusion

For the foregoing reasons, the Court finds that Commerce has neither interpreted the scope contrary to its terms nor altered the language of the scope. In light of the significant deference to which Commerce is entitled in the interpretation of scope

Court No. 11-00137								Page 8

provisions, Commerce's scope determination must be sustained.  See Eckstrom Indus., 254 F.3d at 1072; see also Duferco, 296 F. 3d at 1094–95.  Judgment will enter accordingly.

								   /s/ Gregory W. Carman
								Gregory W. Carman, Judge

Dated: March 23, 2012
       New York, New York

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **ACME FURNITURE INDUSTRY, INC.,** | |
| Plaintiff, | |
| v. | |
| **UNITED STATES,** | Before: Gregory W. Carman, Judge |
| Defendant, | |
| - and - | Court No. 11-00137 |
| **AMERICAN FURNITURE MANUFACTURERS COMMITTEE FOR LEGAL TRADE and VAUGHAN-BASSETT FURNITURE COMPANY, INC.,** | |
| Defendant-Intervenors. | |

## **JUDGMENT**

This case having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; Now therefore, in conformity with said decision, it is hereby

**ORDERED** that Plaintiff Acme Furniture Industry, Inc.'s motion for judgment on the agency record is denied and the challenged determination of Commerce is **SUSTAINED**.

    /s/ Gregory W. Carman  
Gregory W. Carman

Dated: March 23, 2012  
    New York, New York